UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MI-KYUNG CHO,                          :

                    Plaintiff,    :    10 Civ. 3785 (HBP)

     -against-                    :    OPINION
                                       AND ORDER
YOUNG BIN CAFÉ, et al.,           :

                    Defendants.   :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.   Introduction


          This action arises out of the physical assault of

plaintiff while she working as a hostess at defendant Young Bin

Café, a Korean-themed café located in Flushing, New York.

Plaintiff has brought claims for negligence, retaliation, inten-

tional infliction of emotional distress and tortious interference

with business relations and contract.  In Docket Items 60 and 61,

defendants have moved for summary judgment dismissing plaintiff's

complaint in its entirety.  In Docket Item 63, plaintiff cross

moves for an order vacating, in part, an Order that I entered on

August 6, 2012 and dismissing the action for lack of subject

matter jurisdiction.

The parties have consented to my exercising plenary jurisdiction over this matter pursuant to 28 U.S.C. § 636(c). For the reasons that follow, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed. In addition, plaintiff's cross motion (Docket Item 63) is denied.

II.   Background

A.   Facts[1]

Prior to the events giving rise to this action, in or around 2004 or 2005, plaintiff worked at Gabin Café for approximately one year. Gabin Café is located in New Jersey and is owned by former defendant Eun M. Sin (Mi-Kyung Cho Deposition Transcript ("Cho Dep. Tr.") at 8:3-8, attached as Ex. 1 to Declaration of Michael S. Kimm, Esq. ("Kimm Decl.") (Docket Item

---

[1]The facts are drawn from the depositions of plaintiff and former defendant Eun M. Sin. Plaintiff submitted a declaration in opposition to defendants' motion for summary judgment. This declaration, however, is not signed and it does it state that its contents are true and correct as required by 28 U.S.C. § 1746. Accordingly, I do not consider it in connection with the resolution of this motion. See Sterling Fifth Assocs. v. Carpentile Corp., Inc., 03 Civ. 6569 (HB), 2003 WL 22227960 at *5 (S.D.N.Y. Sept. 26, 2003) (Baer, D.J.); Harris v. United States, 97 Civ. 1904 (CSH), 1998 WL 324877, at *1 (S.D.N.Y. 1998) (Haight, D.J.). In any event, plaintiff's declaration adds little, if anything, to her deposition testimony, which I have considered, and even if I did consider plaintiff's declaration, it would not change the result.

66); Eun M. Sin Deposition Transcript ("Sin Dep. Tr. at 29:15-30:2), attached as Ex. 2 to Kimm Decl.).  After working at Gabin Café, plaintiff returned to Korea, but came back to the United States in or around April 2008 (Cho Dep. Tr. at 9:20-22).

On or about July 1, 2008, plaintiff was working as a hostess at Young Bin Café in Flushing, New York (Cho Dep. Tr. at 13:10-25, 73:8-17; Sin Dep. Tr. at 44:8-11).  Like the Gabin Café, Yong Bin Café is owned by Sin (Sin Dep. Tr. at 14:15-22). At some point in the early morning of July 1, 2008, Kwang Kyu Kim, a customer at Young Bin Café, kicked plaintiff in the stomach without provocation, causing her to fall on her side on the marble floor (Cho Dep. Tr. 24:20-24, 29:3-24).  Plaintiff reported this incident to the police and filed a police report (Cho Dep. Tr. at 103:24-104:2).  Prior to this incident, plain-tiff had never complained to Sin or anyone else at Young Bin Café about Kim, who had previously been a customer at Young Bin Café (Cho Dep. Tr. at 88:7-14).

Sin was not at Young Bin Café on the night that the incident occurred; afterwards, an employee told her that Kim had either kicked or pushed plaintiff (Sin Dep. Tr. at 64:6-10).  Sin claims that she tried to call plaintiff after the incident to "ask her if she was okay" (Sin Dep. Tr. at 55:13-18), but that

she never ultimately spoke with plaintiff about Kim's alleged assault (Sin Dep. Tr. at 56:6-12).

Plaintiff's recollection of her interactions with Sin after Kim's assault is different.  Plaintiff claims that she spoke with Sin by telephone after the incident and that Sin called her "an American bitch" (Cho Dep. Tr. at 91:17-22). Plaintiff claims that she took a week off before returning to work at Young Bin Café (Cho Dep. Tr. at 92:18-21).  Plaintiff claims that when she returned, Sin was "very angry" that plain- tiff had filed a police report (Cho Dep. Tr. at 92:6-10) and Sin said that she would not "leave [plaintiff] alone" unless plain- tiff dropped the police report (Cho Dep. Tr. at 93:18-94:2). Plaintiff further claims that Sin demanded that plaintiff apolo- gize to Kim (Cho Dep. Tr. at 94:9-21, 97:4-7, 101:4-20).  As a result of these conversations, plaintiff felt "saddened" and "cornered" (Cho Dep. Tr. at 100:8-24).  She further explained, "From what I hear there is an association of people who run room salons and president Sin, she told them that, you know, that I made problems, I caused noise, so she made sure, she made it so that I couldn't work" (Cho Dep. Tr. at 40:8-12).

Sin maintains that she did not threaten plaintiff or require her to apologize to Kim (Sin Dep. Tr. at 57:20-58:4).

The police also investigated Sin's conduct, and she was charged with witness tampering (Sin Dep. Tr. at 56:17-19).

Plaintiff sought various medical treatments for the injuries resulting from the assault, including acupuncture, x-rays, and chiropractic (Cho Dep. Tr. at 104-111). She claims that she "applied for the employee insurance" but that Sin denied this application (Cho Dep. Tr. at 111:10-14). Sin testified that she did not know whether she had workers' compensation insurance for employees at Yong Bin Café (Sin Dep. Tr. at 58:14-18).

Plaintiff claims that she was fired approximately one week after she returned to work at Young Bin Café (Cho Dep. Tr. at 96:21-23, 102:25-103:3). Sin claims that plaintiff left Young Bin Café voluntarily because plaintiff was going on a vacation (Sin Dep. Tr. at 60:18-20).

B.  Procedural History

Plaintiff commenced this action on May 7, 2010 against Young Bin Café, Gabin, Sin and Kim. She asserted the following claims:  (1) negligence against Kim; (2) retaliatory discharge in violation of the New York State Human Rights Act, Executive Law § 292, et seq., against Young Bin Café and Gabin (collectively, the "Café Defendants") and Sin; (3) retaliatory discharge in violation of the New York City Administrative Code, Section 8-101, et

5

seq., against the Café Defendants and Sin; (4) intentional
infliction of emotional distress against all defendants; (5)
retaliatory discharge in violation of the New Jersey Law Against
Discrimination against Gabin and Sin and (6) tortious interfer-
ence with business relationships against all defendants.

On July 23, 2012, the Café Defendants and Sin moved to
dismiss the action for lack of subject matter jurisdiction
because plaintiff, Sin and Kim are all citizens of Korea, and,
therefore, complete diversity was lacking (Docket Item 52).  I
conducted a conference call on July 30, 2012 to discuss the
issue, and plaintiff made an oral application at that time to
withdraw her claims against Sin and Kim.  By an order dated
August 6, 2012, I granted plaintiff's application and concluded
that neither Sin nor Kim was an indispensable party under
Fed.R.Civ.P. 19 ("August 6 Order" (Docket Item 59)).  I con-
cluded, therefore, that the more appropriate course was to
dismiss plaintiff's claims against Sin and Kim without prejudice,
and to permit the action to continue against only Young Bin Café
and Gabin (Docket Item 59).  In addition, I granted plaintiff's
motion to amend the complaint to add GBNY, Inc. and Gabin, Inc.[2]
as defendants and directed that she serve and file an amended

---

[2]GBNY, Inc. and Gabin, Inc. were improperly sued as Young
Bin Café and Gabin.

6

complaint no later than August 10, 2012.  As of today, however, plaintiff has failed to file an amended complaint.

Thus, the only defendants remaining in this action are Young Bin Café and Gabin, and the remaining claims asserted against them are retaliatory discharge in violation of New York's and New Jersey's anti-discrimination statutes, tortious interference with business relationships and contract and  intentional infliction of emotional distress.  Pursuant to Fed.R.Civ.P. 56, the defendants timely filed their motion for summary judgment seeking the dismissal of plaintiff's complaint in its entirety.  Plaintiff filed an opposition and cross-moved pursuant to Fed.R.Civ.P. 60(b)(6) for an order vacating my August 6 Order to the extent that it dismissed her claims against Sin and Kim.

III.  Analysis

A.  Plaintiff's Cross-Motion
    to Vacate the August 6 Order

By motion dated September 28, 2012, plaintiff seeks an order pursuant to Fed.R.Civ.P. 60 vacating my August 6 Order to the extent that it dismissed her claims against Sin and Kim (Docket Item 63).  Notwithstanding that it was plaintiff who initially sought to withdraw her claims against Sin and Kim, she now argues, somewhat inexplicably, that Sin and Kim are indis-

pensable parties who should have never been dismissed.  In view

of the fact that the Court's subject matter jurisdiction is

predicated on diversity of citizenship, she further contends that

this action should dismissed for lack of subject matter jurisdic-

tion because the inclusion of Kim and Sin, who, like plaintiff,

are citizens of Korea, would destroy diversity jurisdiction.

Plaintiff's application is entirely without merit, and is,

therefore, denied.[3]

      Rule 60(b) of the Federal Rules of Civil Procedure

provides:

> On motion and just terms, the court may relieve a party
> or its legal representative from a . . . order . . .
> for the following reasons:  (1) mistake, inadvertence,
> surprise, or excusable neglect; (2) newly discovered
> evidence that, with reasonable diligence, could not

---

[3]To the extent that plaintiff's motion can be construed as a
motion for reconsideration, it is similarly without a basis.
First, the motion is untimely.  See Local Civ. R. 6.3 ("[A]
notice of motion for reconsideration or reargument of a court
order determining a motion shall be served within fourteen (14)
days after entry of the Court's determination of the original
motion.").  Plaintiff's present motion is dated September 28,
2012, more than a month after my August 6 Order, and was made
well beyond the 14-day time limit.  Second, plaintiff has failed
to identify any controlling precedent or factual matters that I
overlooked in considering plaintiff's initial application to
withdraw her claims against Sin and Kim.  See Quinn v. Altria
Grp., Inc., 07 Civ. 8783 (LTS)(RLE), 2008 WL 3518462 at *1
(S.D.N.Y. Aug. 1, 2008) (Swain, D.J.), citing Virgin Airways v.
Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992); Mahmud
v. Kaufman, 496 F. Supp. 2d 266, 269-70 (S.D.N.Y. 2007) (Conner,
D.J.); McMahan & Co. v. Donaldson, Lufkin & Jenrette Sec. Corp.,
727 F. Supp. 833, 833 (S.D.N.Y. 1989) (Mukasey, D.J.).

> have been discovered in time to move for a new trial
> under Rule 59(b); (3) fraud (whether previously called
> intrinsic or extrinsic), misrepresentation, or miscon-
> duct by an opposing party; (4) the judgment is void;
> (5) the judgment has been satisfied, released or dis-
> charged; it is based on an earlier judgment that has
> been reversed or vacated; or applying it prospectively
> is no longer equitable; or (6) any other reason that
> justifies relief.

Fed.R.Civ.P. 60(b).  "A motion seeking relief pursuant to Rule

60(b) is addressed to the sound discretion of the district

court."  In re Dubrowsky, 268 B.R. 6, 7 (E.D.N.Y. 2001), citing

Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986); see also

Paddington Partners v. Bouchard, 34 F.3d 1132, 1140 (2d Cir.

1994) ("A district court's decision on a Rule 60 motion is

reviewed for abuse of discretion.").  The moving party bears the

burden of demonstrating "'equitable entitlement to the extraordi-

nary remedy of vacatur.'"  Microsoft Corp. v. Bristol Tech.,

Inc., 250 F.3d 152, 154 (2d Cir. 2001), quoting U.S. Bancorp

Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 26 (1994).

Plaintiff has not specified under which subsection of

Rule 60(b) she seeks relief.  However, subsections 1 through 5

are plainly inapplicable and, therefore, plaintiff is entitled to

relief only if Rule 60(b)(6)'s standards are met.  As explained

by the Court of Appeals for the Second Circuit, Rule 60(b)(6) is

a "'grand reservoir of equitable power to do justice in a partic-

ular case,'" but it is not "bottomless" and "courts require the

9

party seeking to avail itself of the Rule to demonstrate 'extraordinary circumstances' warrant relief."  <u>Stevens v. Miller</u>, 676 F.3d 62, 67 (2d Cir. 2012) (internal citation omitted); <u>accord</u> <u>Empresa Cubana Del Tabaco v. Gen. Cigar Co.</u>, 385 F. App'x 29, 31 (2d Cir. 2010) (summary order).

      Plaintiff has failed to identify any extraordinary circumstances that would justify vacatur of that portion of my August 6 Order that dismissed her claims against Sin and Kim without prejudice.  At base, plaintiff's argument represents nothing more than a disagreement with my conclusion that neither Sin nor Kim are indispensable parties.  This falls far short of the required demonstration of extraordinary circumstances.  <u>See</u> <u>United Airlines, Inc. v. Brien</u>, 588 F.3d 158, 176 (2d Cir. 2009) ("[A] Rule 60 motion 'may not be used as a substitute for appeal' and that a claim based on legal error alone is 'inadequate.'" (internal citation omitted)).  Accordingly, plaintiff's cross-motion is denied in its entirety.

B.  Defendants' Motion
    for Summary Judgment

    1.  Procedural Deficiencies

        As an initial matter, plaintiff contends that defen-
dants' motion for summary judgment should be denied because it is
procedurally deficient.

        Defendants' submissions are procedurally deficient in
several respects.  Defendants failed to file the required state-
ment of material facts as to which they contend there is no
genuine issue to be tried that is required by Local Civil Rule
56.1(a).  In addition, although defendants seek relief through a
document entitled "Memorandum of Law in Support of Motion for
Summary Judgment" (Docket Item 61), defendants failed to file the
required notice of motion.  See Local Civ. R. 7.1(a)(1).  In
opposition to defendants' motion, plaintiff submitted a Local
Rule 56.1 Statement of Material Facts (Docket Item 68).  Defen-
dants responded to this statement, but did so in a summary -- and
largely unhelpful -- manner (Docket Item 69).

        Local Civil Rule 56.1 "requires a party moving for
summary judgment to submit a statement of the allegedly undis-
puted facts on which the moving party relies, together with
citation to the admissible evidence of record supporting each

11

such fact." Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003), citing Local Civ. R. 56.1(a), (d).  Furthermore, "[f]ailure to submit such a statement may constitute grounds for denial of the motion."  Local Civ. R. 56.1(a).

Nonetheless, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001), citing Wright v. Bankamerica Corp., 219 F.3d 79, 85 (2d Cir. 2000) and Somlyo v. J Lu-Rob Enters., 932 F.2d 1043, 1048 (2d Cir. 1991).  "Even in the absence of a Rule 56.1 statement altogether, courts have proceeded to rule on the basis of the underlying evidence." Rui Xiang Huang v. J & A Entm't Inc., 09-CV-5587 (ARR)(VVP), 2012 WL 6863918 at *3 (E.D.N.Y. Dec. 3, 2012) (citing cases), adopted by, 2013 WL 173738 (E.D.N.Y. Jan. 16, 2013); see also United States v. Abady, 03 Civ. 1683 (SHS), 2004 WL 444081 at *2 (S.D.N.Y. Mar. 11, 2004) (Stein, D.J.) ("When a moving party fails to file such a Rule 56.1 statement, it is within the discretion of the court to either overlook the failure or to deny the motion.").

The relevant material facts are contained in the depositions of plaintiff and former defendant Sin; both parties have submitted copies of these transcripts.  Given the small size

12

of the record, defendants' failure to file the Rule 56.1 state-
ment will not impair my "assiduous review of the record" to
identify the disputed material facts, if any.  See <u>T.Y. v. New
York City Dep't of Educ.</u>, 584 F.3d 412, 417 (2d Cir. 2009); <u>Holtz
v. Rockefeller & Co., Inc.</u>, <u>supra</u>, 258 F.3d at 73.  Accordingly,
I shall not summarily deny defendants' motion and shall consider
it on the merits.  See, e.g., <u>Mays v. Lane</u>, 10 Civ. 4810 (ILG),
2012 WL 2395155 at *2 (E.D.N.Y. June 25, 2012) (overlooking
plaintiff's failure to file a Rule 56.1 statement and declining
to deny motion for summary judgment on that ground); <u>Lopez v.
Echebia</u>, 693 F. Supp. 2d 381, 386 (S.D.N.Y. Mar. 11, 2010)
(Young, D.J.) (considering motion notwithstanding defendant's
failure to file Rule 56.1 statement).

　　　　Finally, plaintiff contends that defendants' summary
judgment motion should be rejected as untimely.  There is no
merit to this argument.  Plaintiff points to the October 31, 2011
scheduling order entered by the Honorable Paul A. Engelmayer, to
whom this action was then assigned, which set the deadline for
dispositive motion at the close of discovery on January 20, 2012
(Docket Items 23, 40).  Plaintiff, however, overlooks my August 6
Order in which I modified the deadline and directed that defen-
dants file their motion for summary judgment by August 23, 2012.

Defendants' motion complied with my August 6 Order and is,
therefore, timely.


    2.  <u>Summary Judgment Standards</u>


     The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

> Summary judgment may be granted only where there
> is no genuine issue as to any material fact and the
> moving party . . . is entitled to a judgment as a
> matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
> motion for summary judgment, a court must resolve all
> ambiguities and draw all factual inferences in favor of
> the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>,
> 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202
> (1986).  To grant the motion, the court must determine
> that there is no genuine issue of material fact to be
> tried.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23,
> 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine
> factual issue derives from the "evidence [being] such
> that a reasonable jury could return a verdict for the
> nonmoving party." <u>Anderson</u>, 477 U.S. at 248, 106 S.
> Ct. 2505.  The nonmoving party cannot defeat summary
> judgment by "simply show[ing] that there is some meta-
> physical doubt as to the material facts," <u>Matsushita
> Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
> 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), or by a
> factual argument based on "conjecture or surmise,"
> <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d Cir. 1991).
> The Supreme Court teaches that "all that is required
> [from a nonmoving party] is that sufficient evidence
> supporting the claimed factual dispute be shown to
> require a jury or judge to resolve the parties' differ-
> ing versions of the truth at trial." <u>First Nat'l Bank
> of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89, 88
> S. Ct. 1575, 20 L. Ed. 2d 569 (1968); <u>see also</u> <u>Hunt v.
> Cromartie</u>, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L.
> Ed. 2d 731 (1999).  It is a settled rule that
> "[c]redibility assessments, choices between conflicting
> versions of the events, and the weighing of evidence

are matters for the jury, not for the court on a motion
for summary judgment." <u>Fischl v. Armitage</u>, 128 F.3d
50, 55 (2d Cir. 1997).

<u>McClellan v. Smith</u>, 439 F.3d 137, 144 (2d Cir. 2006); <u>accord</u> <u>Hill</u>
<u>v. Curcione</u>, 657 F.3d 116, 124 (2d Cir. 2011); <u>Jeffreys v. City</u>
<u>of New York</u>, 426 F.3d 549, 553-54 (2d Cir. 2005); <u>Powell v. Nat'l</u>
<u>Bd. of Med. Exam'rs</u>, 364 F.3d 79, 84 (2d Cir. 2004).

"Material facts are those which 'might affect the
outcome of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'" <u>Coppola v. Bear</u>
<u>Stearns & Co., Inc.</u>, 499 F.3d 144, 148 (2d Cir. 2007), <u>quoting</u>
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>accord</u>
<u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir.
2007).  "'[I]n ruling on a motion for summary judgment, a judge
must ask himself not whether he thinks the evidence unmistakably
favors one side or the other but whether a fair-minded jury could
return a verdict for the [non-movant] on the evidence
presented[.]'" <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d
778, 788 (2d Cir. 2007), <u>quoting</u> <u>Readco, Inc. v. Marine Midland</u>
<u>Bank</u>, 81 F.3d 295, 298 (2d Cir. 1996).

Summary judgment is "ordinarily inappropriate" in
employment discrimination cases where the employer's intent and
state of mind are in dispute. <u>Carlton v. Mystic Transp., Inc.</u>,

15

202 F.3d 129, 134 (2d Cir. 2000); <u>Cifarelli v. Vill. of Babylon</u>,

93 F.3d 47, 54 (2d Cir. 1996); <u>see</u> <u>Gallo v. Prudential Residen-</u>

<u>tial Servs., Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994);

<u>Montana v. First Fed. Sav. & Loan Ass'n</u>, 869 F.2d 100, 103 (2d

Cir. 1989); <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985).

Moreover, in discrimination cases,

> summary judgment may not be granted simply because the
> court believes that the plaintiff will be unable to
> meet his or her burden of persuasion at trial . . . .
> There must either be a lack of evidence in support of
> the plaintiff's position, . . . or the evidence must be
> so overwhelmingly tilted in one direction that any
> contrary finding would constitute clear error.

<u>Danzer v. Norden Sys., Inc.</u>, 151 F.3d 50, 54 (2d Cir. 1998)

(footnote and citations omitted).  <u>See</u> <u>Risco v. McHugh</u>, 868 F.

Supp. 2d 75, 98 (S.D.N.Y. 2012) (Ramos, D.J.).

> When deciding whether summary judgment should be
> granted in a discrimination case, we must take addi-
> tional considerations into account.  <u>Gallo v. Pruden-</u>
> <u>tial Residential Services</u>, 22 F.3d 1219, 1224 (2d Cir.
> 1994). "A trial court must be cautious about granting
> summary judgment to an employer when, as here, its
> intent is at issue." <u>Id</u>.  "[A]ffidavits and deposi-
> tions must be carefully scrutinized for circumstantial
> proof which, if believed, would show discrimination."
> <u>Id</u>.  Summary judgment remains appropriate in discrimi-
> nation cases, as "the salutary purposes of summary
> judgment -- avoiding protracted, expensive and harass-
> ing trials -- apply no less to discrimination cases
> than to . . . other areas of litigation." <u>Weinstock</u>,
> 224 F.3d at 41 (internal quotation marks omitted); <u>see</u>
> <u>also</u> <u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d
> 456, 466 (2d Cir. 2001) ("It is now beyond cavil that
> summary judgment may be appropriate even in the
> fact-intensive context of discrimination cases.").

<u>Desir v. City of New York</u>, 453 F. App'x 30, 33 (2d Cir. 2011)
(alterations in original).

>           3.   Application of the
>                <u>Foregoing Legal Principles</u>

>        a.   <u>Discrimination/Retaliation Claims</u>

Plaintiff's complaint fails to identify the specific
statutory provisions under which she seeks relief.  Despite this
lack of clarity, the parties in their motion papers appear to
agree that plaintiff's theory is retaliatory discharge.  Accord-
ingly, I shall limit my analysis to this alleged claim of dis-
crimination.

>           i.   New Jersey Anti-
>                <u>Discrimination Law</u>

Plaintiff claims that defendants have violated the New
Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 <u>et</u>
<u>seq</u>. ("NJLAD").  Plaintiff cannot, however, avail herself of this
New Jersey law and, accordingly, this claim must be dismissed.

"New Jersey courts have consistently applied the law of
the state of employment to workplace claims, and have therefore
only applied the NJLAD if the plaintiff worked in New Jersey."
<u>Satz v. Taipina</u>, CIV.A. 01-5921 (JBS), 2003 WL 22207205 at *16

(D.N.J. Apr. 15, 2003) (internal footnote omitted), aff'd, 122 F. App'x 598 (3d Cir. 2005); accord Goodman v. Port Auth. of N.Y. & N.J., 850 F. Supp. 2d 363, 383 (S.D.N.Y. 2012) (Sweet, D.J.) (collecting cases); Brunner v. AlliedSignal, Inc., 198 F.R.D. 612, 614 (D.N.J. 2001); Norenius v. Multaler, Inc., L-449-06, 2008 WL 4162878 at *7 (N.J. App. Div. Sept. 11, 2008).  "This restriction on the extraterritorial application of the NJLAD is rooted in the well-settled understanding that 'New Jersey law regulates conduct in New Jersey, not outside the state.'" Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 657 (D.N.J. 2008), quoting Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6, 10, 660 A.2d 1261, 1263 (N.J. App. Div. 1995).[4]

          The NJLAD has no application here.  As confirmed by both plaintiff and Sin during their depositions, the events that gave rise to the allegedly discriminatory conduct occurred while plaintiff was working at Young Bin Café in Flushing, New York (Cho Dep. Tr. at 73:8-17; Sin Dep. Tr. at 44:8-11).[5]  The fact that plaintiff had previously worked at Gabin Café, which is

---

          [4]Although I need not reach the issue, the application of New Jersey's anti-discrimination law to conduct occurring in New York would probably be unconstitutional.  See generally Healy v. Beer Inst., 491 U.S. 324, 332 (1989).

          [5]Indeed, in plaintiff's complaint, she alleges that the incident occurred while she was working at Young Bin Café in Flushing, New York (Docket Item 1 ¶ 8).

located in New Jersey, does not alter my conclusion.  Her claims
are not based on anything that occurred during her employment at
Gabin Café in New Jersey.  Accordingly, defendants are entitled
to summary judgment dismissing plaintiff's claim for retaliatory
discharge under the NJLAD.

> ii.  New York City and New
>      York State Human Rights Laws

Defendants next claim that summary judgment is war-
ranted dismissing plaintiff's claims for retaliatory discharge
under the New York State Human Rights Law ("NYSHRL") and New York
City Human Rights Law ("NYCHRL") because Young Bin Café did not
employ enough individuals to fall within the reach of these
statutes these statutes and because plaintiff has failed to
establish a prima facie case for retaliatory discharge.  Plain-
tiff responds that she has engaged in a protected activity by
reporting Kim's assault to the police and requesting workers'
compensation insurance from Sin.  Even if all the facts were as
plaintiff claims that they are, I conclude that plaintiff has
failed to show that she engaged in a protected activity and,
therefore, defendants are entitled to summary judgment dismissing
her claims under the NYSHRL and NYCHRL.

19

Claims of retaliation under the NYSHRL and NYCHRL are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). E.g., Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013); Salamon v. Our Lady of Victory Hosp., 514 F.3d 217, 226 n.9 (2d Cir. 2008); Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006); Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001).

Under the McDonnell Douglas framework, plaintiff's claims are assessed through a three-part, burden-shifting analysis:

> The burden-shifting framework laid out in McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817, governs retaliation claims under both Title VII and the NYSHRL. Schiano, 445 F.3d at 609.  To make out a prima facie case of retaliation, a plaintiff must make four showings:  that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." Id. at 608.  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001). If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation."  Id. at 625.

Summa v. Hofstra Univ., supra, 708 F.3d at 125; accord Noel v.
BNY-Mellon Corp., 514 F. App'x 9, 10-11 (2d Cir. 2013); Benn v.
City of New York, 482 F. App'x 637, 638 (2d Cir. 2012).

      To establish a prima facie case of retaliation under
the NYSHRL, a plaintiff must demonstrate that:  (1) she engaged
in a protected activity; (2) the employer was aware of this
activity; (3) she suffered a materially adverse action and (4) a
causal connection exists between the protected activity and the
adverse action.  Gallo v. Alitalia-Linee Aeree Italiane-Societa
per Azioni, 585 F. Supp. 2d 520, 542 (S.D.N.Y. 2008) (McMahon,
D.J.).  Similarly, to establish a prima facie case of retaliation
under the NYCHRL, "a plaintiff must show that (1) he or she
engaged in a protected activity as that term is defined under the
NYCHRL, (2) his or her employer was aware that he or she partici-
pated in such activity, (3) his or her employer engaged in
conduct which was reasonably likely to deter a person from
engaging in that protected activity, and (4) there is a causal
connection between the protected activity and the alleged retal-
iatory conduct."  Brightman v. Prison Health Serv., Inc., 108
A.D.3d 739, 740 (2d Dep't 2013); accord Milhalik v. Credit
Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 112 (2d Cir.
2013); Fincher v. Depository Trust & Clearing Corp., 604 F.3d
712, 723 (2d Cir. 2010); Mayers v. Emigrant Bancorp, Inc., 796 F.

Supp. 2d 434, 446 (S.D.N.Y. 2011) (Peck, M.J.); Zakrzewska v. The
New School, 598 F. Supp. 2d 426, 436 (S.D.N.Y. 2009) (Kaplan,
D.J.).

      Although the prima facie cases of retaliation under the
NYSHRL and NYCHRL are similar, "[c]laims under the [NYCHRL] must
be reviewed independently from and 'more liberally' than their
federal and state counterparts." Loeffler v. Staten Island Univ.
Hosp., 582 F.3d 268, 278 (2d Cir. 2009), quoting Williams v. N.Y.
City Dep't Hous. Auth., 61 A.D.2d 62, 66-69, 872 N.Y.S.2d 27, 31
(1st Dep't 2009); accord Mihalik v. Credit Agricole Cheuvreux N.
Am., Inc., supra, 715 F.3d at 109; Winston v. Verizon Servs.
Corp., 633 F. Supp. 2d 42, 47 (S.D.N.Y. 2009) (Castel, D.J.).
Under the NYCHRL, there is "a one-way ratchet:  'Interpretations
of New York state or federal statutes with similar wording may be
used to aid in interpretation of New York City Human Rights Law,
viewing similarly worded provisions of federal and state civil
rights law as a floor below which the City's Human Rights Law
cannot fall.'" Loeffler v. Staten Island Univ. Hosp., supra, 582
F.3d at 278 (internal citation omitted).  A court must construe
"the NYCHRL's provisions 'broadly in favor of discrimination
plaintiffs, to the extent that such a construction is reasonably
possible.'" Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
supra, 715 F.3d at 109, quoting Albunio v. City of New York, 16

N.Y.3d 472, 477-78, 947 N.E.2d 135, 137, 922 N.Y.S.2d 244, 246 (2011); see also Fincher v. Depository Trust & Clearing Corp., supra, 604 F.3d at 723; Loeffler v. Staten Island Univ. Hosp., supra, 582 F.3d at 278; Malena v. Victoria's Secret Direct, LLC, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012) (Oetken, D.J.).  "Under the NYCHRL, 'no challenged conduct may be deemed nonretaliatory before a determination that a jury could not reasonably conclude from the evidence that such conduct was, in the words of the statute, "reasonably likely to deter a person from engaging in protected activity."'"  Winston v. Verizon Servs. Corp., supra, 633 F. Supp. 2d at 48, quoting Williams v. N.Y. City Hous. Auth., 61 A.D.3d at 70-71, 872 N.Y.S.2d at 34; see also Fincher v. Depository Trust & Clearing Corp., supra, 604 F.3d at 723, quoting N.Y.C. Admin. Code § 8-107(7) (alterations in original) ("Under the [NY]CHRL, retaliation 'in any manner' is prohibited, and '[t]he retaliation . . . need not result in an ultimate action with respect to employment . . . or in a materially adverse change in the terms and conditions of employment.'" ); Sotomayor v. City of New York, 862 F. Supp. 2d 226, 262 (E.D.N.Y. 2012) (noting that "the employer's conduct need not be as severe to trigger liability" under the NYCHRL), aff'd, 713 F.3d 163 (2d Cir. 2013) (per curiam).

Protected activity within the meaning of the NYSHRL and NYCHRL is conduct that "oppos[es] or complain[s] about unlawful discrimination."  Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 312-13, 819 N.E.2d 998, 1012, 786 N.Y.S.2d 382, 386 (2004); see N.Y. Exec. L. § 296(7); N.Y.C. Admin. Code § 8-107(7). Accord Sotomayor v. City of New York, supra, 862 F. Supp. 2d at 262; Mayers v. Emigrant Bancorp, Inc., supra, 796 F. Supp. 2d at 448; Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni, supra, 585 F. Supp. 2d at 542; Suriel v. Dominican Republic Educ. & Mentoring Project, Inc., 85 A.D.3d 1464, 1467, 926 N.Y.S.2d 198, 202 (3d Dep't 2011).   As a general matter, the NYSHRL prohibits an employer from discriminating against an individual on the basis of her "age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predispos-ing genetic characteristics, marital status, or domestic violence victim status."  N.Y. Exec. L. § 296(1)(a).  Similarly, the NYCHRL prohibits an employer from discriminating on the basis of an individual's "actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, or alienage or citizenship status." N.Y.C. Admin. Code § 8-107(1)(a).  Although "[c]omplaints about conduct clearly prohibited by statute need not mention discrimi-nation or use particular language," Int'l Healthcare Exchange,

24

Inc. v. Global Healthcare Exchange, LLC, 470 F. Supp. 2d 345, 357
(S.D.N.Y. 2007) (Swain, D.J.), "[f]iling a grievance complaining
of conduct other than unlawful discrimination . . . is simply not
a protected activity subject to a retaliation claim under the
[NYSHRL or NYCHRL]," Forest v. Jewish Guild for the Blind, supra,
3 N.Y.3d at 312-13 n.11, 819 N.E.2d at 998 n.11, 786 N.Y.S.2d at
396 n.11.

        Even accepting plaintiff's version of the events giving
rise to this action as true, she cannot make out a prima facie
case of retaliation under either the NYSHRL or NYCHRL.

        Plaintiff first argues that her filing of a police
report concerning Kim's assault constitutes a protected activity.
This complaint, however, did not concern any conduct prohibited
under either the NYSHRL or NYCHRL.  Kim's assault of plaintiff,
while disturbing, simply did not relate to any employment prac-
tice -- discriminatory or not -- of the defendants.  Aside from
the fact that assault occurred while plaintiff was working at
Young Bin Café, there are no facts suggesting any connection
between the defendants' employment practices and this assault.
There is no indication in the record that plaintiff's police
report alleged that Sin had engaged in any sort of discriminatory
practice or that Kim's assault was motivated by any sort of
discrimination of which defendants were aware.  See Castagna v.

25

Luceno, 09 Civ. 9332 (CS), 2011 WL 1584593 at *11 (S.D.N.Y. Apr. 26, 2011) (Seibel, D.J.) (in Title VII action, "[Plaintiff] does not specify that she told the police anything about discrimination, as opposed to assault and abuse, so it is dubious that the report would constitute protected activity." (internal footnote omitted)).  Therefore, plaintiff's police report did not constitute a protected activity because it was not made in opposition to statutorily prohibited discrimination.

Plaintiff next argues that her request for workers' compensation benefits from Sin constituted a protected activity. Even if I were to assume that plaintiff's vague reference to her application for "employee insurance" (Cho Dep. Tr. at 111:10-14) is meant to refer to workers' compensation, such a request is simply not a protected activity because it does not constitute an opposition or complaint about unlawful discrimination.  E.g. Brooks v. Overseas Media, Inc., 69 A.D.3d 444, 445, 893 N.Y.S.2d 37, 38 (1st Dep't 2009).  There is no indication in the record that, and plaintiff does not even argue, that Sin's purported denial of these benefits was based on any of plaintiff's membership in a protected class.

Even considering plaintiff's claim for retaliatory discharge under the NYCHRL "independently and 'more liberally'" than her claim under the NYSHRL, Loeffler v. Staten Island Univ.

26

Hosp., supra, 582 F.3d at 278, plaintiff's retaliation claim
still fails.  Viewing plaintiff's police report and request for
workers' compensation in the most lenient light, they simply do
not relate to, much less oppose, any prohibited discriminatory
practices.  The record does not suggest that any of the events
giving rise to this action were motivated by any manner of
discrimination prohibited under the NYCHRL.  Thus, plaintiff has
failed to show that she engaged in a protected activity under the
NYCHRL.

Finally, plaintiff's reliance on Borawski v. Abulafia,
36 Misc. 3d 1222(A), 2012 WL 3104394 (N.Y. Sup. Ct. 2012) is
unavailing.  In that case, the court concluded that the plain-
tiff, a medical resident, had stated a claim for retaliatory
discharge under the NYSHRL based on allegations that she was
terminated in retaliation for her complaint that the increase in
her on-call hours violated the rules of the American Board of
Obstetrics and Gynecology.  Borawski v. Abulafia, supra, 2012 WL
3104394 at *4.  The court in Borawski, however, reached this
conclusion without engaging in an independent analysis of whether
the plaintiff's letter of complaint constituted a protected
activity under the NYSHRL.  To the extent that this case can be
read as concluding that a complaint about hours is a protected
activity, I respectfully disagree with that conclusion.  Pro-

27

tected activity under either the NYSHRL or NYCHRL does not
include the entire gamut of all complaints concerning employment
practices, but rather is limited to actions which complain or
oppose the discriminatory practices prohibited under these
statues.[6]

      In sum, although plaintiff's complaints addressed
activity that may be illegal, they simply did relate to any
discriminatory practices of the defendants.  Accordingly, they do
not constitute protected activities under either the NYSHRL or
NYCHRL.  Plaintiff has, therefore, failed to meet her burden of
establishing a <u>prima facie</u> case of retaliatory discharge, and
defendants are entitled to summary judgment dismissing plain-
tiff's claims under both the NYSHRL and NYCHRL.

      Because I conclude that summary judgment is warranted
due to plaintiff's failure to establish a <u>prima facie</u> case under

---

[6]In her opposition, plaintiff vaguely refers to her
"exercise of 'first amendment' rights to petition the government
for a redress of grievance" (Docket Item 65 at 22-23).  To the
extent that plaintiff is arguing that defendants retaliated
against her in violation of the First Amendment, such a claim
would have to be brought under 42 U.S.C. § 1983.  <u>See</u> <u>Espinal v.</u>
<u>Goord</u>, 558 F.3d 119, 128 (2d Cir. 2009).  However, such a claim
would be frivolous in this case because none of the defendants
could even arguably considered to be state actors, an essential
element of a Section 1983 claim.  <u>See</u> <u>generally</u> <u>Filarsky v.</u>
<u>Delia</u>, 132 S. Ct. 1657, 1660 (2012); <u>Sykes v. Bank of America</u>,
Docket No. 12-110-cv, 2013 WL 3814371 at *5 (2d Cir. July 24,
2013).

either the NYSHRL or the NYCHRL, I need not address defendants'
alternate argument that Young Bin Café did not employ enough
individuals to be covered by either the NYSHRL or NYCHRL.

b.  Tortious Interference with
Business Relations and Contract

Plaintiff's complaint includes a claim for "Interfer-
ence with Contract/Relations" which appears to be an attempt to
state a claim for either tortious interference with business
relations or tortious interference with contract.  Defendants'
motion for summary judgment analyzes it as tortious interference
with contract.  Plaintiff did not respond to defendant's argument
concerning this claim.[7]  It is not clear whether plaintiff is
asserting only one of these claims, or both.  Nonetheless,
whether analyzed as tortious interference with business relations
or tortious interference with contract, summary judgment is
warranted dismissing this claim.

_____

[7]Plaintiff's failure to respond to defendants' arguments
concerning this claim would justify the dismissal of the claim on
the ground that it has been abandoned.  Roman-Malone v. City of
New York, 11 Civ. 8560 (PAC), 2013 WL 3835117 at *4 (S.D.N.Y.
July 25, 2013) (Crotty, D.J.); DiGiovanna v. Beth Israel Med.
Ctr., 651 F. Supp. 2d 193, 208 n.108 (S.D.N.Y. 2009) (Kaplan,
D.J.) (collecting cases); Arma v. Buyseasons, Inc., 591 F. Supp.
2d 637, 643 (S.D.N.Y. 2008 (Sweet, D.J.).  As a matter of
discretion, I shall consider the claim on the merits.

Under New York law,[8] a claim for tortious interference with business relations requires that a plaintiff show that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008); Goldhirsh Grp., Inc. v. Alpert, 107 F.3d 105, 108-09 (2d Cir. 1997); see Carvel Corp. v. Noonan, 3 N.Y.3d 182, 189-90, 818 N.E.2d 1100, 1103, 785 N.Y.S.2d 359, 362 (2004).  This claim "applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant." M.J. & K. Co. v.  Matthew Bender & Co., 220 A.D.2d 488, 490, 631 N.Y.S.2d 938, 940 (2d Dep't 1995) (internal quotation omitted).

Although not articulated with any degree of clarity, plaintiff's claim appears to be based on her testimony that Sin

---

[8]With respect to the state-law claims, the defendants rely on New York law and plaintiff, as evidenced by her lack of response to these arguments, does not appear to claim that the law of any other jurisdiction applies; "such 'implied consent . . . is sufficient to establish choice of law.'" Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004), quoting Krumme v. WestPoint Stevens, Inc., 238 F.3d 133, 138 (2d Cir. 2000); accord Teitelbaum v. Lay Siok Lin, 423 F. App'x 106, 106 (2d Cir. 2011).

told "an association of people who run room salons" that plain-
tiff "made problems" and "caused noise," thus ensuring that
plaintiff could not work (Cho Dep. Tr. at 40:8-12).  This
conclusory testimony is insufficient to withstand a motion for
summary judgment.  See Major League Baseball Props., Inc. v.
Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) (collecting
cases).  Plaintiff has failed to identify any specific business
relationships with which defendants interfered, and, thus, this
claim fails as a matter of law.  See Ho Myung Moolsan Co., Ltd.
v. Manitou Mineral Water, Inc., 665 F. Supp. 2d 239, 255
(S.D.N.Y. 2009) (Pitman, M.J.) (collecting cases).

          Under New York law, a claim of tortious interference
with a contract requires:  "(i) existence of a valid contract;
(ii) defendant's knowledge of that contract; (iii) defendant's
intentional procurement of the breach of that contract; and (iv)
damages caused by the breach." G.K.A. Beverage Corp. v.
Honickman, 55 F.3d 762, 767 (2d Cir. 1995), citing Kronos, Inc.
v. AVX Corp., 81 N.Y.2d 90, 94, 612 N.E.2d 289, 292, 595 N.Y.S.2d
931, 934 (1993); accord White Plains Coat & Apron Co. v. Cintas
Corp., 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383, 835 N.Y.S.2d 530,
532 (2007).  "There can be no cause of action to recover damages
for tortious interference with a contract where there is no valid
and enforceable contract." Durante Bros. Constr. Corp. v.

31

College Point Sports Ass'n, Inc., 207 A.D.2d 379, 380, 615
N.Y.S.2d 455, 457 (2d Dep't 1994).  Furthermore, a breach of
contract is a required element of a claim for tortious interfer-
ence with contractual relations.  NBT Bancorp Inc. v.
Fleet/Norstar Fin. Grp., Inc., 87 N.Y.2d 614, 621, 664 N.E.2d
492, 495, 641 N.Y.S.2d 581, 584 (1996).

     Summary judgment is also warranted to the extent that
plaintiff's claim is for tortious interference with contract.
The record is devoid of any facts that even arguably suggest that
plaintiff had a contract with a third party.  This absence of a
valid and enforceable contract is fatal to plaintiff's tortious
interference with contract claim.

     Defendants are, therefore, entitled to summary judgment
on plaintiff's claim for tortious interference with business
relations and contract.

        c.  Intentional Infliction
           of Emotional Distress

     Finally, defendants argue that summary judgment with
respect to plaintiff's intentional infliction of emotional
distress claim is warranted because it is barred by the statute
of limitations.  Plaintiff also failed to respond to this argu-
ment.

Under New York law, claims for intentional infliction of emotional distress are governed by a one-year statute of limitations.  N.Y. C.P.L.R. § 215; Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478, 491, 868 N.E.2d 189, 197, 836 N.Y.S.2d 509, 518 (2010).  Here, there is no dispute that the incident giving rise to plaintiff's claim occurred in 2008.  Plaintiff specifically testified that Kim kicked her while she was working at Young Bin Café on July 1, 2008 (Cho Dep. Tr. at 13:10-25, 24:20-24).  Plaintiff did not commence this action until May 7, 2010, almost a year after the statute of limitation had expired.  Accordingly, her claim for intentional infliction of emotional distress is time-barred, and summary judgment is, therefore, warranted.

## IV.  Conclusion

For the reasons set forth above, plaintiff's cross-motion to vacate part of my Order dated August 6, 2012 (Docket Item 63) is denied and defendants' motion for summary judgment (Docket Items 60 and 61) is granted in its entirety.  The Clerk

33

of the Court is directed to mark Docket Item 63 as closed, and to
close this case.

Dated:   New York, New York
         September 9, 2013

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Michael S. Kimm, Esq.
Kimm Law Firm
33 Sylvan Avenue
Suite 106
Englewood Cliffs, New Jersey   07632

Richard T. Sules, Esq.
Stockschlaeder, McDonald & Sules, P.C.
161 William Street, 19th Floor
New York, New York   10038

Sidney A. Weisberg, Esq.
Weisberg & Weisberg
98 Cuttermill Road
Great Neck, New York   11021